Dan **BESEDICH**, Plaintiff,

v.

**MISSILE AND SPACE DIVISION OF LTV AEROSPACE CORPORATION,**

and

**International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW) and Local Union 809, International Union, Defendants.**

Civ. A. No. 6–71542.

United States District Court, E. D. Michigan, S. D.

June 7, 1977.

Alfred W. Wilke, Pieter H. van Horne, Wayne G. Wegner, McInally, Rockwell, Brucker, Newcombe & Wilke, Detroit, Mich., for plaintiff.

John Corbett O'Meara, Robert P. Ufer, Detroit, Mich., for Missile and Space, etc.

Edwin G. Fabre, Asst. Gen. Counsel, UAW, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Plaintiff Dan Besedich has brought this action under 29 U.S.C. § 185 against his former employer, Missile and Space Division, LTV Aerospace Corporation, for wrongful discharge and against his union, International Union, United Automobile Workers and Local 809, for breach of its duty of fair representation in the handling of his subsequent grievance for reinstatement. Following pre-trial discovery, all defendants have moved for summary judgment under Federal Rule of Civil Procedure 56, contending that the allegations of plaintiff's complaint fail to state a cause of action under 29 U.S.C. § 185.

Besedich was initially employed by LTV in November, 1963 as a tool and die maker. In 1966, after several promotions, he attained the position of tool and die senior lead man. This position, like all others that plaintiff had previously held, was covered by the collective bargaining agreement between LTV and UAW Local 809, and plaintiff was a member of the union with accrued seniority. On July 18, 1969, plaintiff left the bargaining unit and accepted a salaried position as a tooling processor. Prior to the transfer, plaintiff was concerned about the status of his seniority rights and his right to return to his former position in the event of a lay-off. He alleges in his complaint that he discussed these matters with union representatives, who informed him that, under Article IX, § 17 of the collective bargaining agreement, he would not jeopardize his seniority rights

and would continue to accrue seniority at his salaried position. Article IX, § 17 reads as follows:

Section 17.

If any employee of the Company has been transferred prior to the effective date of this Agreement or who subsequently is transferred or promoted from the Bargaining Unit to the position of Foreman or Assistant Foreman, or any other position in the plant outside of the scope of the Bargaining Unit he shall accumulate seniority during his employment outside of the Bargaining Unit. Seniority date for employees transferred to the Michigan Division from any of the Company's other facilities for purposes of this section and for layoffs and recalls shall be from the date of transfer to the Michigan Division. The *Company retains the right to return him to the Bargaining Unit.* An employee who was transferred or promoted to a position outside of the Bargaining Unit and who subsequently is returned to the Bargaining Unit will carry with him his total accumulated seniority and be placed in the job classification from which he is transferred or promoted, displacing, if necessary, an employee of least seniority in such job classification. (emphasis added)

On November 14, 1969, plaintiff was laid off from his salaried position by LTV due to loss of business. Thereafter, he sought reinstatement in the bargaining unit and a return to his former job. LTV declined to reinstate him, contending that Section 17 reserves to the company the right to return plaintiff to the bargaining unit or not to return him and that plaintiff's seniority rights within the union did not in any way qualify this company prerogative. The local union filed a grievance on plaintiff's behalf which was contested by the company and processed through the third step without resolution. At this point, union officials met and discussed plaintiff's grievance and determined not to proceed to the fourth step, which was arbitration. Plaintiff alleges that he was not informed of the union's decision until after the deadline for proceeding to arbitration had passed and plaintiff's rights under the collective bargaining agreement had expired.

This action was originally filed on January 12, 1972, but was dismissed without prejudice on May 2, 1972 for failure to exhaust intra-union remedies. Plaintiff thereafter did exhaust his union remedies and on July 27, 1976, filed a second amended complaint.

The complaint alleges that Local 809 breached its duty of fair representation by refusing to process plaintiff's grievance to arbitration and by failing to inform him of this decision until the deadline for arbitration had passed. He contends that Section 17 of the union contract clearly provides for his right to return to the bargaining unit following a lay-off from a salaried position, and that the union's decision not to proceed to arbitration was therefore unreasonable and, in any event, contrary to the assurance he had been given by union representatives prior to his transfer. Plaintiff seeks reinstatement, retroactive seniority, and damages of $125,000.

Accepting the allegations of the complaint as true, defendants move for summary judgment, contending that no claim of bad faith on the union's part can be made out on these facts, and that in the absence of bad faith, the union did not breach its duty of fair representation.

Defendants' motion must be granted. A union's decision not to process a member's grievance to arbitration, based on the union's good faith determination that the grievance is without merit, is not actionable under § 185. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 29 L.Ed.2d 473 (1971); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953); *Johnson v. General Drivers, Warehouse. & H., Local Union No. 89,* 488 F.2d 250, 252 (6th Cir. 1973); *Dill v. Greyhound Corp.,* 435 F.2d 231 (6th Cir. 1970); *Balowski v. International Union, UAW,* 372 F.2d 829 (6th Cir. 1967). As the United States Supreme Court stated in *Ford Motor Co. v. Huffman, supra* at 338, 73 S.Ct. at 686:

Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

The discretion accorded a union under § 185 was further explained by the Supreme Court in *Humphrey v. Moore,* 375 U.S. 335, 349–350, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964):

Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. . . . To remove or gag the union in these cases would surely weaken the collective bargaining and grievance process.

Plaintiff's claim of union bad faith is based primarily on the allegation that Section 17 of the collective bargaining agreement clearly gives him a right to return to his former hourly job upon lay-off from his salaried position and that the union's contrary interpretation of the contract is therefore so unreasonable as to be arbitrary and capricious. This theory of recovery cannot be sustained for several reasons. First, the language of Section 17 is not at all clear in according plaintiff such rights and is at best ambiguous on this issue. Indeed, if the court were charged with the responsibility of rendering an authoritative interpretation of this contract provision, it would probably agree with the company and the union that an employee's return to the collective bargaining unit under Section 17 is solely within the company's prerogative.

■ However, the court is not charged with this responsibility under § 185, and this essentially is the second flaw in plaintiff's argument. This court has no authority to second guess the union's interpretation of Section 17. As the United States Court of Appeals for the Sixth Circuit stated in *Balowski v. International Union, supra* at 834, fn. 6 :

"To say in such cases that the union's compliance with the duty of fair representation turns on whether the Board or a court agrees with the union's interpretation of the contract is to transfer the function of interpretation from the contracting parties to the Board or the courts. It is simply impossible to square that result with Congress' unequivocal policy of having the contracting parties, wherever they can reach agreement, have the final interpretative word themselves." Ratner, Some Contemporary Observations on Section 301, 52 Georgetown L.J. 260, 283.

This point was reaffirmed in *Dill v. Greyhound Corp., supra* at 238:

The District Court construed the collective bargaining agreement differently than the parties did. Even if the parties were incorrect in their interpretation of the agreement, this alone would not impose a liability on the part of the Council.

. . .

In *United Steelworkers of America v. American Mfg. Co.,* the Court said:

"When the judiciary undertakes to determine the merits of a grievance under the guise of interpreting the grievance procedure of collective bargaining agreements, it usurps a function which under that regime is entrusted to the arbitration tribunal." 363 U.S. 564, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960).

While this statement related to arbitration, it does not negate the validity of the interpretation of the parties in settling a grievance.

Union bad faith cannot be established merely by showing a mistake in judgment.

■ Plaintiff's second claim of union liability under § 185 is based on the failure of union representatives to inform him of their decision not to arbitrate his grievance until after the deadline for taking this step had passed. This claim is also rejected.

Plaintiff could not have taken his grievance to arbitration alone; only the union could arbitrate his claim for reinstatement. A similar argument for recovery under § 185 was made in *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335, 1341 (6th Cir. 1974), and rejected by the Court of Appeals:

> Whitten contends the evidence at trial showed that the Union did not inform him of the October meeting at which his grievance was discussed, that he was given no notice that the Union did not pursue his grievance further, and that it did not answer his letters he wrote inquiring about the status of his grievance. Judge Contie stated in his ruling that this might be evidence from which a jury could infer that the Union had acted in an arbitrary manner.
>
> We conclude that this evidence would not be sufficient to support a jury verdict against the Union for breach of its duty of fair representation. Appellant in his brief states: "Contrary to normal practice, the Union never advised Whitten either before or after its meeting with the Company . . .". However, we have found no evidence in the record to suggest that Whitten's grievance was processed by the Union differently than grievance of other Union members. The Union may have acted negligently or exercised poor judgment in failing to keep Whitten informed of the status of his grievance, but this is not sufficient to support a claim of unfair representation.

■ At oral argument on defendants' motion for summary judgment, the court raised the issue of union liability under a theory of gross and wanton negligence in the handling of plaintiff's grievance. Such union conduct was held to constitute a breach of duty of fair representation in *Ruzicka v. General Motors Corp., et al.*, 523 F.2d 306 (6th Cir. 1973). The court invited further briefs on this question, and having considered these, now rejects this theory of recovery as applied to the facts of the present case. *Ruzicka* involved an employee grievance for reinstatement which was terminated by the negligent and unexplained failure of the union's grievance rep-

resentative to comply with the grievance process by timely filing a statement of unadjusted grievance. As the United States Court of Appeals for the Sixth Circuit ruled:

> Such negligent handling of the grievance, unrelated as it was to the merits of Appellant's case, amounts to unfair representation.
>
> \*   \*   \*   \*   \*   \*
>
> . . . when a union makes no decision as to the merit of an individual's grievance but merely allows it to expire by negligently failing to take a basic and required step towards resolving it, the union has acted arbitrarily and is liable for a breach of its duty of fair representation.

*Ruzicka v. General Motors Corp., et al., supra* at 310.

■ No such claim of wanton disregard or gross negligence on the union's part can be made out on the facts of this case. It is conceded that plaintiff's union representatives decided not to proceed to arbitration only after discussing plaintiff's claim for reinstatement and determining that it had no merit. There was no wanton negligence involved in this decision-making process. The union's failure to inform plaintiff of this decision until after the arbitration deadline had run cannot constitute a basis for recovery under *Ruzicka*—whether negligent or not. As explained by the Court of Appeals in its opinion denying rehearing:

> Our opinion is this action speaks to a narrow range of cases in which unexplained union inaction, amounting to arbitrary treatment, *has barred an employee from access to an established union-management apparatus for resolving grievances.* Ruzicka v. General Motors Corp., et al., *528 F.2d 912, 913 (emphasis added).*

As already noted, the union's failure to notify plaintiff of the termination of his grievance prior to the arbitration deadline did not in any way affect his rights under the grievance procedure.

Plaintiff's final claim of unfair representation relates to the assurances he received from certain union officials prior to his transfer out of the bargaining unit. Plaintiff contends that he was informed by a Mr. Vanderstreaten, a member of the union bargaining committee which had negotiated the contract in question, that he would retain his seniority rights at his salaried position and would be able to transfer back to his former hourly position in the event of a lay-off. These allegations, even if true, would not establish union liability under § 185. Vanderstreaten, whatever his expertise on this subject, had no authority to bind the union with his representations to plaintiff. It is not alleged that Vanderstreaten was a union official at the time he and plaintiff discussed plaintiff's rights under Section 17. Even if plaintiff had sought out the proper party for advice on his Section 17 rights, his union steward or the local president, the union would still not be estopped from subsequently determining, in the context of the grievance process, that arbitration of this issue would not be in the best interests of plaintiff or the union. *Humphrey v. Moore, supra; Simmons v. Union News Co.,* 341 F.2d 531 (6th Cir. 1965).

For all of these reasons, the court holds that plaintiff's complaint fails to state a cause of action for breach of defendant union's duty of fair representation. 29 U.S.C. § 185. Having found no defect in the processing of plaintiff's grievance, the court further holds that plaintiff's claim against LTV for wrongful discharge is barred by the finality provisions of the grievance process established by the collective bargaining agreement. *Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 554 (1976); *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

Accordingly, defendants' motion for summary judgment is granted. An order is entered herewith.