148

In the Matter of SHARON JACOBS, Appellant, v BOARD OF EDUCATION OF EAST MEADOW UNION FREE SCHOOL DISTRICT, Respondent, and PAUL DRESKA, Intervenor-Respondent.

Second Department, October 2, 1978

### APPEARANCES OF COUNSEL

*James R. Sandner (Noel D. Cohen* of counsel), for appellant.

*Sheldon J. Sanders* for intervenor-respondent.

*Paul E. Klein (Deborah A. Watarz* of counsel), for New York Educators Association, *amicus curiae.*

### OPINION OF THE COURT

SHAPIRO, J.

The intervenor-respondent, Paul Dreska, moved for an order discharging petitioner's attorney James R. Sandner (who was counsel to the New York State United Teachers [NYSUT]), or, in the alternative, that NYSUT assign legal representation to him or pay the cost of an attorney chosen by him. Special Term granted the intervenor's motion and ordered the withdrawal of such counsel unless NYSUT "provide[d] independent legal counsel for the Intervenor Respondent or agree[d] to pay reasonable legal fees * * * to be incurred by the Intervenor Respondent in this proceeding". The order should be reversed and the intervenor's application denied in its entirety. An understanding of the situation requires a detailed statement of the facts.

### THE FACTS

Sharon Jacobs, by petition in an article 78 proceeding by "her attorney James R. Sandner (Noel D. Cohen of counsel)", alleged that she had been appointed to a three-year probationary period by the respondent board of education (board) as a teacher of physical education effective September 1, 1974 and that she had been laid off on July 28, 1976 due to a reduction of teachers in her tenure area. It was further alleged that one

Paul Dreska had been employed as a physical education teacher one year after she was, yet he was retained in contravention of subdivision 2 of section 2510 of the Education Law. She asserted that Mr. Dreska's earlier employment by the school district beginning in 1953 was as a director of recreation and that as such he was on the *administrative* rather than the teaching staff.

Mr. Dreska's moving affidavit made no mention of the petitioner's allegations of his pre-1975 employment being of an administrative nature. His conclusory description of the nature of his employment was that he had "been a teacher in the East Meadow School District for 23 years * * * and began * * * [his] employment as a teacher in *1953* and [had] been continuously employed as a teacher by the East Meadow School District" (emphasis in original).

Mr. Dreska pointed out that the counsel appearing for petitioner was on the staff of NYSUT of which petitioner was a member. He then stated: "I am also a member of the New York State United Teachers and have been a member (intermittently) for many years. I pay the same union dues to support the same attorney that is representing the petitioner, Sharon Jacobs, in her case against me. I cannot understand why the union chose to represent Sharon Jacobs in this matter. There is absolutely no question in my mind that the union's participation in this matter is a patent true conflict of interest. In essence, this boils down to a case of which teacher shall win. This is not a true case of a teacher against a Board of Education but a case of 'teacher against teacher'. It is a case in which the union should not have taken any side but should have maintained a completely neutral position. It is basically unfair that my union dues are being used to pay an attorney who is seeking to have me removed as a teacher. No better definition of conflict of interest exists."

In response, petitioner's attorney James R. Sandner pointed out, *inter alia,* that NYSUT is not a direct employee organization, although its functions include furnishing legal representation on a limited basis to "individual affiliated local labor organizations and, in some instances, individual members".[1]

---

1. Petitioner asserts as a threshold issue, that NYSUT had no "duty of fair representation" to the intervenor since such obligation is placed only on the labor organization per se because by statutory right it had become the exclusive bargaining unit of all the employees. We do not believe this case should be decided on so narrow a concept. We see little difference between the union providing free legal services

The East Meadow Teachers Association (of which both petitioner and intervenor are members) is one of the "affiliated local labor organizations". Presumably, part of its "dues" to NYSUT is budgeted by the latter for payment of its counsel.

Mr. Sandner averred, and it is not disputed, that NYSUT only provides counsel to individuals where the issues are "at the very least job related, and in the opinion of counsel, meritorious"; that he had investigated the petitioner's case and had concluded that her request for legal representation met such criteria because Mr. Dreska's services up to June, 1975 were those of a supervisor in the administrative area of physical education and that he had not, up to that time, served in the tenure area applicable to *teachers* of physical education.

The affidavits submitted by the petitioner included those of various personnel employed in the school district. They were to the following effect: (a) although Mr. Dreska's salary was paid in accordance with the schedule of teachers' salaries, it was not paid from the moneys set aside for teachers' salaries; (b) he had acted as director of the summer playground program in the course of which he would review the requirements of the program, prepare and distribute budgets for the various departments and review the work performance of the teachers; (c) he had acted in the same capacity and manner with respect to the teen-age recreation program operated by the board from 1959 to 1975; (d) he had never attended staff meetings of physical education teachers which were held four times a year and which all physical education teachers were required to attend; (e) all elementary physical education teachers employed by the board were required to take an in-service course in "Movement Education" in 1973, but Mr. Dreska did not take that course; (f) in 1968 all elementary and junior high school teachers employed by the board collaborated in publishing a curriculum manual for physical education, but Mr. Dreska did not participate in the preparation thereof; (g) Mr. Dreska's name appeared in various school district publications, such as the school yearbook and district

directly to a member who is in dispute with the employer, or indirectly through its umbrella association to whom funds are provided, which the latter uses, in part, to pay its counsel. We also essentially concur with Mr. Justice MARTUSCELLO's reasoning in his dissent that the intervenor's charges do not fall within "the exclusive nondelegable jurisdiction" of the Public Employees Relations Board (see Civil Service Law, § 205, subd 5, par [d]; § 209-a, subd 2).

calendar, as Director of Recreation; and (h) prior to June, 1975, Mr. Dreska did not teach any classes, nor did he ever attend any of the regularly scheduled teacher faculty meetings, but instead, after the close of the normal school day, would work in his office or visit the various school buildings where afternoon and evening after-school recreation programs were in progress.

Also included in the papers submitted by the petitioner was a copy of the May 17, 1956 minutes of a formal business meeting of the board. In a paragraph entitled "Education Committee Tenure Appointments & Leaves of Absence" it was stated that "Mr. McVey moved the appointments to tenure of Paul Dreska, Recreation Director and Mary Malone, elementary teacher, both effective October 1, 1956, and also Arthur Josephson, elementary teacher, effective November 1, 1956. Mr. McVey took this occasion to mention that Mr. Dreska had done a fine job in handling the recreation program and consequently, he was very pleased to recommend him for tenure. Motion was seconded by Mr. Rossiter and carried unanimously."

Mr. Dreska did not submit any affirmation or documents to controvert these assertions. Thus his position essentially is that, even assuming all the evidentiary data to have been correctly set forth, the fact that both he and the petitioner are presently members of the East Meadow Teachers Association bars NYSUT from providing counsel in the "one on one" conflict between them, since NYSUT receives payments from the East Meadow Teachers Association.

### LEGAL BACKGROUND

The doctrine of "duty of fair representation" was recognized in *Steele v Louisville & Nashville R. R. Co.* (323 US 192). In that case, the United States Supreme Court determined that since the Railway Labor Act provided that the union chosen by a majority of the employees becomes the representative of all of the employees, there is a concomitant duty by the union "to exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them" (p 203). On the same day that it decided the *Steele* case, the Supreme Court, in *Wallace Corp. v Labor Bd.* (323 US 248, 255) held that such obligation also existed under the National Labor Relations Act, in that "[b]y its selection as bargaining representative, it has become the agent of all the

employees, charged with the responsibility of representing their interests fairly and impartially."

However, thereafter, in *Vaca v Sipes* (386 US 171), a union's refusal to process a grievance to arbitration, for one of its members who had alleged wrongful discharge, was upheld. The union had concluded that there was no merit to the grievance based on its belief that it was contrary to the collective bargaining agreement. The court held that the union had not breached its duty of fair representation, stating (p 191): "Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."

In *Humphrey v Moore* (375 US 335, 349-350), the court said:

"[W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another. In *Ford Motor Co. v. Huffman,* 345 U. S. 330, the Court found no breach of duty by the union in agreeing to an amendment of an existing collective bargaining contract, granting enhanced seniority to a particular group of employees and resulting in layoffs which otherwise would not have occurred. 'Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.' *Id.,* at 338. Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes.

"As far as this record shows, the union took its position

honestly, in good faith and without hostility or arbitrary discrimination."

In *Anderson v AMBAC Ind.* (40 NY2d 865, 866), where the Court of Appeals acknowledged the concept of duty of fair representation by the collective bargaining unit (citing *Vaca v Sipes, supra)*, it stated that where the union represented conflicting groups within its constituency it was "bound to experience some conflict of interest, but the mere fact that the union obtained different benefits for each group does not in itself constitute a showing of bad faith".

Further, a breach of a union's duty of fair representation is not established by proof that an employee's rejected grievance was, in fact, meritorious. Union management is not required to be infallible and an honest mistake in judgment does not constitute bad faith *(Besedich v Missile & Space Div. of LTV Aerospace Corp.,* 433 F Supp 954; *Dill v Greyhound Corp.,* 435 F2d 231, 238).

### SPECIAL TERM'S DECISION

Special Term recognized that "a certified bargaining representative's duty to fairly represent all of the members of the bargaining unit * * * does not require the union to take every grievance raised by a member of the bargaining unit to arbitration merely because he demands it"; that "the obligation of the union is satisfied as long as the union is neither arbitrary nor discriminatory and acts in good faith"; and that "the union should not be 'neutralized' when an issue arises between two sets of employees". (94 Misc 2d 659, 661.) Special Term, however, held (p 662) that the above legal principles were not applicable in the instant case because here "the labor organization has made a choice between two of its members in a matter which has little or no bearing upon the membership as a whole. Thus the 'majoritarian principles' * * * which underscore the union's need for 'a wide range of reasonableness' * * * are not really present."

Special Term stated further (p 662): "[I]t seems incongruous for a union to sponsor or to support the attack of one member against the job security of another member in what can be termed a 'one on one' dispute * * * [I]t holds the possibility of a proliferation of lawsuits sponsored by the union on behalf of some of its members against the other members. This could lead to serious intra-union dissension and fragmentation of the union."

Special Term then posed and answered the rhetorical question (p 663): "Does not the member have the right, based on the usual expectations of a prospective union joiner, to anticipate that in a crucial contest for job survival, if the power of the union is not available to support him, at least it will not be used to support his opponent with free legal representation? I think so."

Special Term concluded (p 663) that petitioner's counsel "must withdraw unless the union provides independent legal counsel for the intervenor-respondent or agrees to pay the reasonable legal fees incurred by intervenor-respondent in this proceeding." We disagree.

### THE LAW

■ This issue is not as stated in Special Term's rhetorical question. It is rather whether the court should interfere with the exercise of the "business judgment" of union management that one of its members should be provided the legal services of its counsel when it believes, in good faith, that such member has been deprived of his seniority rights. We believe that it should not.

■ We agree with Special Term that *Steele v Louisville & Nashville R. R. Co.* (323 US 192, *supra)* and *Wallace Corp. v Labor Bd.* (323 US 248, *supra)* are not controlling. Those cases were indeed based on "majoritarian principles" and their holdings merely constitute a recognition of the fact that *where a statutorily certified union engages in collective bargaining with the employer,* it may necessarily make some demands which give lesser benefits to (or even harm the interests of) certain classes of its employees. Such "unevenness", such "conflict", cannot be avoided, and all that the adversely affected union members can ask is that the union "exercise fairly the power conferred upon it in behalf of all those for whom it acts, without hostile discrimination against them" *(Steele v Louisville & Nashville R. R. Co., supra,* p 203).[2]

■ Nevertheless these cases highlight the proposition that

2. Contrary to the position taken in the petitioner's brief, the "duty of fair representation" recognized in *Steele v Louisville & Nashville R. R. Co.* (323 US 192, *supra)* and *Wallace Corp. v Labor Bd.* (323 US 248, *supra)* is not directly related to any duty to provide legal representation to a member who has asserted a grievance against the employer. The doctrine was asserted, as aforesaid, in the context of the union's obligation to represent all of its members fairly and without prejudice *in the collective bargaining negotiations.*

the activity of a union should not be paralyzed by a complaint of "conflict of interest" resulting from its supporting the position of one group of employees (or, in this case, one particular employee) against the position of another group of employees (or, in this case, a particular member of the union), when its determination to do so is made in good faith on articulable facts.

True, as Special Term intimated, the union here was not forced to become involved in the essentially "one on one" controversy between the petitioner and the intervenor. Had it chosen, it could have taken the position that it would not represent either member in which event its exercise of judgment in that regard could not properly be overruled.

■ But what the intervenor is claiming (and what Special Term held) is that the union may not exercise its good faith in deciding to represent one of its members against another in a seniority dispute between them without the threat of court injunction or other punitive impositions. As we see it, this places the horse before the wrong cart. It is the *court* that should not become involved where the union has in good faith concluded that it *should* become involved.[3] Otherwise, matters

---

3. We see no greater reason for the courts to become involved in union than in corporate management decisions. As to the latter, the rule has been summarized in 3A Fletcher Cyclopedia Corp. ([1975 rev vol], p 41): "The sound business judgment rule expresses the unanimous decision of American courts to eschew intervention in corporate decision making if the judgment of directors and officers is uninfluenced by personal considerations and is exercised in good faith." In *Turner v American Metal Co.* (268 App Div 239), which involved the issue of whether corporate fiduciaries had diverted to themselves an alleged corporate opportunity, the court held that it believed that the directors had exercised their honest business judgment in rejecting the development of a particular enterprise, and that based on such rejection those directors who chose to take the opportunity for themselves could validly do so. The court said (pp 259-260): "Its decision not to purchase the Climax stock from the participants we are persuaded was made in good faith and in the exercise of honest judgment. Under settled law, such a corporate act within the corporate powers is valid and binding upon the corporation and its stockholders. The internal affairs, questions of policy of management, and expediency of contracts of a corporation are subject to the control of a board of directors, and insofar as those directors are honest, capable and independent, their judgment is final [citing cases]. The power of a board of directors is well stated in *Pollitz v Wabash R.R. Co. (supra* [207 NY 113], p 124): 'They were the exclusive executive representatives of the corporation and were charged with the administration of its internal affairs and the management and use of its assets. Their corporate acts, within the powers of the corporation, in the lawful and legitimate furtherance of its purposes, in good faith and the exercise of an honest judgment, are valid and conclude the corporation and the stockholders. Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely

of the most vital interest to many union members will become a "no man's land" with the union remaining barrenly impassive, despite what may appear to the union management to be an outrageous denial by an employer of the clearest rights of an employee.

Seniority rights, especially in the public sector, are a vital issue at the present time. Each seniority case will necessarily result in a benefit to one employee and harm to another, although both may be members of the same union. From the volume of cases that have appeared before this and other courts, we take judicial notice that tenure and seniority questions are generally processed by union-provided counsel who have been in the forefront in the controversies in this area. To hold that this is a forbidden "conflict-of-interest" area would mean that union members could not obtain what they would reasonably expect: representation by union counsel to obtain the seniority that they believe they are entitled to under section 2510 of the Education Law, when the union in good faith, as in the case here, agrees with them.

■ We recognize the danger of discriminatory or other invidious considerations as the basis for a union's sponsorship of "the attack of one member against the job security of another member". The danger is present in such a situation, just as it is where a school board, perhaps based on ulterior considerations, favors one employee over another in deciding who has seniority. However, where a union provides free legal representation to a member who has presented a prima facie case of wrongful determination of seniority by a school board, "conflict of interest", which is an inherent factor, does not foreclose the matter, but instead, invites inquiry as to the reasonableness and good faith of the union's decision (Vaca v Sipes, 386 US 171, supra; Humphrey v Moore, 375 US 335, supra).

On such inquiry here we find the following:

1. The union-provided counsel did not play a role in this matter until after the board had favored the intervenor over the petitioner as to who had been employed longer as a teacher.

---

to their honest and unselfish decision'." The same rule should apply to the honest judgment of union management as to a seniority dispute. As stated in Forkosch, A Treatise on Labor Law ([2d ed], § 154, p 298) "Assuming good faith and proper methods, a union's decisions are to be treated as conclusive, in absence of capricious or arbitrary action."

2. The interests of the intervenor and the board are virtually identical, so that the intervenor's legal interests will be protected by the attorneys for the board. Thus, in a most practical sense, the intervenor is getting "free counsel". Therefore, there is no particular imbalance if the union provides "free counsel" for the petitioner.

3. There is no claim or even suspicion of a discriminatory or invidious reason for the union providing counsel to the petitioner (cf. *Board of Educ. v Califano* [Docket No. 77 Civ 1609, SDNY, LASKER, J.], wherein NYSUT had furnished counsel only to male physical education teachers in connection with a controversy as to the merger of the seniority lists of male and female teachers).

4. On the record, the *factual* allegations supporting petitioner's claim, that she had been employed as a teacher before Mr. Dreska was so employed, have been uncontroverted. Also uncontroverted is petitioner's implicit *legal* contention that employment as a recreation director is not included in computing seniority within the teaching tenure area.[4]

■ In sum, we see nothing improper in a union's decision to back, with legal support, the position of one of its discharged members who, upon investigation, it concludes was senior in her tenure area to another, even though the latter is also a member of that union. Whether the union's opinion ultimately becomes that of the court is an entirely different matter.[5]

It is important to note that if Mr. Dreska obtains the relief that he primarily seeks, the only consequence will be that petitioner will have to obtain her own counsel. If that were to happen, the petitioner will be paying for her own counsel while Mr. Dreska will still be obtaining the essentially free legal services provided by the board. On this narrowly focused issue there is little difference as to the equities. Certainly a holding that the petitioner need not personally pay for her counsel would not create a roaring inequity where the intervenor is himself the beneficiary of free legal services provided by

---

4. Mr. Dreska did not contend that he had been working out of his official tenure position.

5. Thus, it has been held that in determining whether a union had breached its duty of fair representation, it is not the role of the court to second-guess a union's interpretation of an employment contract, so that "Union bad faith cannot be established merely by showing a mistake in judgment" *(Besedich v Missile & Space Div. of LTV Aerospace Corp.,* 433 F Supp 954, 958).

a public agency paid for by taxes imposed on the petitioner as well as the intervenor.[6]

The order appealed from should therefore be reversed and the motion of the intervenor should in all respects be denied.

MARTUSCELLO, J. P. (dissenting). I disagree with the majority and would affirm for the reasons set forth in the opinion of Mr. Justice YOUNG at Special Term and the additional grounds advanced by Federal District Judge MORRIS E. LASKER in a similar case (Board of Educ. v Califano, Docket No. 77 Civ 1609, SDNY).

Petitioner Sharon Jacobs, a physical education teacher, was dismissed for budgetary reasons after two years of probationary service which began September 1, 1974. Represented by counsel on the staff of the New York State United Teachers (NYSUT) union, she commenced this article 78 proceeding against the respondent board of education seeking reinstatement. She alleged that one Paul Dreska had been retained in the same tenure area although he was less senior to her. It was asserted that prior to September 1, 1975 he had been employed by the board as a director of recreation. In its answer and supporting affidavit, the board responded that Dreska was appointed on October 1, 1953 as a teacher of recreation, which is in the same tenure area as physical education; that he has been regarded and paid a salary as a teacher; that he has received the benefits to which teachers are entitled and that he has not received any benefits as an administrator.

Dreska moved to intervene, stating that he was appointed as a probationary teacher in 1953, was approved for tenure as a teacher in 1956 and has always been a teacher. His supporting papers include various school reports and forms in which he is referred to as a "teacher". For example, the teacher's application form, in which he stated that at the termination of his military service in 1945 he completed his education and was employed as a high school physical education teacher and coach and as a play street director and director of the youth center of the New York Police Athletic League, and letters written by the superintendent of schools informing him that

---

6. Certainly Mr. Dreska has the right, and may be wise to obtain private counsel. It does not follow, however, that his desire to "make assurance double sure" (Shakespeare, Macbeth, act IV, scene I) must be satisfied by payment of Mr. Dreska's legal fees by the union which had in good faith decided to furnish legal services to the petitioner.

he was a successful candidate for a teaching position and including him in the list of teachers recommended for probation. His proposed answer is a general denial.

In her reply, the petitioner requested that the court determine whether Dreska was employed as a supervisor/administrator or as a teacher "in either the physical education/recreation tenure area, whether considered separate or combined". She contended that if he served as a supervisor/administrator, his "seniority is irrelevant in determining the least senior teacher in the tenure area of the position abolished pursuant to § 2510 of the Education Law". Special Term (GIBBONS, J.) granted Dreska's motion for leave to intervene and directed a hearing on the nature of his employment prior to September, 1975.

Thereafter, Dreska moved by order to show cause to have the petitioner's attorneys discharged or to have the union either assign an attorney to represent him or pay his counsel fees. In his opposing affidavit, petitioner's counsel, James R. Sandner, *inter alia,* repeated petitioner's contention that Dreska was employed in a position of an administrative-supervisory nature prior to October, 1975.

Special Term (YOUNG, J.) granted Dreska's motion and directed counsel, employed by NYSUT to represent the petitioner, to withdraw unless NYSUT would provide independent legal counsel for Dreska or would agree to pay the reasonable legal fees incurred by Dreska in this proceeding. In his decision, Mr. Justice YOUNG (94 Misc 2d 659, 662, 663) conceded that a "union has the right to take a good faith position opposing some of its members in grievance proceedings or matters of general concern to members", but observed that "[n]evertheless it seems incongruous for a union to sponsor or to support the attack of one member against the job security of another member in what can be termed a 'one on one' dispute * * * If this conduct is permissible and becomes a regular practice it holds the possibility of a proliferation of lawsuits sponsored by the union on behalf of some of its members against the other members. This could lead to serious intra-union dissension and fragmentation of the union." He concluded that a member of a union has "the right * * * to anticipate that in a crucial contest for job survival, if the power of the union is not available to support him, at least it will not be used to support his opponent with free legal representation", but added: "However, that does not mean

that the union must remain mute when a bad policy is put forward. It does not preclude a stand by the union in matters of principle. In such a situation the union can make application to appear *amicus curiae* and the court can then decide whether it be appropriate for the union to so appear in that case. Thus the union would fulfill its function of supporting the principle it regards as meritorious without providing legal representation for the actual prosecution of a lawsuit against a member. If the union's position is taken in good faith, the member whose stand the union opposes *amicus curiae* cannot, in my view, reasonably complain."

In *Board of Educ. v Califano* (Docket No. 77 Civ 1609, SDNY, *supra)*, Judge MARVIN LASKER found Mr. Justice YOUNG's decision at bar to be "exhaustive" and "persuasive". In *Califano,* the male physical education teachers supported the merger of seniority lists for male and female teachers and the female teachers opposed the merger. The same union involved here (NYSUT) furnished counsel to the male teachers. Judge LASKER granted the motion by the female teachers to disqualify counsel for the male teachers or, in the alternative, to require that the union furnish counsel for the female teachers. In his decision he stated, *inter alia:*

"In sum, the female teachers are paying, in part, for their opponents' legal expenses.

"We believe that whatever its justification within the NYSUT structure or otherwise, NYSUT's representation of the male teachers against the female teachers, financed by funds to which the females contribute as well as the males, violates at least the spirit, if not the letter, of Canon 9 of the Code of Professional Responsibility that 'A lawyer should avoid even the appearance of impropriety.' * * * As is apparent from Canon 9 (see, especially, EC 9-1, EC 9-2), the Code places great weight on maintaining public confidence both in the legal profession and the legal system, see, also, *Emle Industries, Inc. v Patentex, Inc.,* 478 F2d 562, 571 (2d Cir. 1973), and in avoiding conduct which may appear unethical when viewed by a layman. Where doubts arise, they are to be resolved with the public trust in mind: * * * 'When explicit ethical guidance does not exist, a lawyer should determine his conduct by acting in a manner that promotes public confidence in the integrity and efficiency of the legal system and the legal profession.' Ethical Consideration 9-2, ABA Code of Professional Responsibility.

"Having said this, we conclude that a layman's faith would be severely troubled were we to countenance the continuing representation by NYSUT counsel, who is being provided at the expense of the very party against whom his expertise is being used. An order of disqualification is appropriate: 'The dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case.' *Emle Industries, Inc. v. Patentex, Inc., supra,* 478 F.2d at 571."

The majority agrees with Mr. Justice YOUNG that the cases which the petitioner relies on are not controlling as they involve situations in which "a statutorily-certified union engages in collective bargaining with the employer". However, it concludes: "In sum, we see nothing improper in a union's decision to back, with legal support, the position of one of its discharged members who, upon investigation, it concludes was senior in her tenure area to another, even though the latter is also a member of that union. Whether the union's opinion ultimately becomes that of the court is an entirely different matter."

To arrive at this conclusion, the majority sees the issue as: "whether the court should interfere with the exercise of the 'business judgment' of union management that one of its members should be provided the legal services of its counsel when it believes, in good faith, that such member has been deprived of his seniority rights".

The majority then finds that, on the facts at bar, the union acted reasonably and in good faith. Included in its findings is the following: "On the record, the *factual* allegations supporting petitioner's claim, that she had been employed as a teacher before Mr. Dreska was so employed, have been uncontroverted. Also uncontroverted is petitioner's implicit *legal* contention that employment as a recreation director is not included in computing seniority within the teaching tenure area." (Emphasis in original.)

The issue in this article 78 proceeding, as presented by the pleadings and supporting papers, is whether Dreska's employment prior to October, 1975 was in the tenure area of the position abolished. Special Term (GIBBONS, J.) ordered a hearing and determination with respect to this issue. The subject of this appeal is Dreska's motion as to counsel *at that hearing.*

The majority, however, has made a determination on the merits in the main proceeding to support its determination on the subject motion. Further, the majority's finding that the petitioner's factual allegations and legal contention are "uncontroverted" ignores the answers submitted by Dreska and the board, and the supporting papers on Dreska's motion to intervene, all of which have been omitted from the majority's statement of facts.

The majority expresses concern lest the union be compelled to remain "barrenly impassive", but ignores Mr. Justice YOUNG's statement that the union may apply to appear as *amicus curiae.* The majority states that "[i]t is the *court* that should not become involved where the union has in good faith concluded that it *should* become involved" (emphasis in original). It draws an analogy with the courts' refusal to intervene in corporate management decisions. The majority errs. It is not the conduct of the union which is involved here, or its internal affairs, but the conduct of counsel at a judicial proceeding. Dreska is a member of NYSUT. In my opinion, NYSUT's counsel owes him the duty not to represent another member of NYSUT against him in a seniority dispute. As stated by Judge LASKER in *Board of Educ. v Califano (supra):* "This is not a case in which a member complains of a contract which, though bargained for by a union in good faith, favors some members over others; neither is this a case in which a union, suing in its own name, takes a good faith position opposed to that of some of its members—in either circumstance, disadvantaged union members have an opportunity, prior to the union's adoption of a position, to influence the union's stand. Rather, this is a case in which an unincorporated membership association is sponsoring the attack of one group of members against another."

Although the majority attempts to distinguish *Califano* on its facts, Judge LASKER's determination that an order of disqualification was appropriate, was based on the fact that NYSUT counsel was "being provided at the expense of the very party against whom his expertise is being used."

I add that it is not necessary that the court have jurisdiction over the union since Special Term's order of disqualification is directed to the petitioner's counsel as an attorney and member of the Bar. The alternative direction is merely a condition, compliance with which would permit counsel to continue to represent the petitioner. The Legislature has not

conferred upon the Public Employees Relations Board exclusive nondelegable power to regulate the appearance of attorneys in an action or proceeding instituted before a court (cf. *Matter of Jefferson County Bd. of Supervisors v New York State Public Employment Relations Bd.,* 36 NY2d 534, 538; Civil Service Law, § 205, subd 5, par [d]).

In support of its determination, the majority found that: "The interests of the intervenor and the board are virtually identical, so that the intervenor's legal interests will be protected by the attorneys for the board. Thus, in a most practical sense, the intervenor is getting 'free counsel'. Therefore, there is no particular imbalance if the union provides 'free counsel' for the petitioner."

The majority concluded its opinion with the statement: "It is important to note that if Mr. Dreska obtains the relief that he primarily seeks, * * * petitioner will be paying for her own counsel while Mr. Dreska will still be obtaining the essentially free legal services provided by the board."

There is nothing in the order appealed from which bars the union from providing the petitioner with counsel. It provides only that the union must not deny Dreska representation by counsel who will present his case without any possibility of conflict of interest.

The order under review should be affirmed.

GULOTTA, COHALAN and MARGETT, JJ., concur with SHAPIRO, J.; MARTUSCELLO, J. P., dissents and votes to affirm the order, with an opinion.

Order of the Supreme Court, Nassau County, dated September 6, 1977, reversed, without costs or disbursements, and the intervenor's motion is denied.