David M. HAUPT and Pamela J. Haupt, his wife, Plaintiffs,

v.

MICHIGAN BELL TELEPHONE COMPANY, a Michigan corporation, and The Communication Workers of America, an incorporated labor union, jointly and severally, Defendants.

Civ. No. 83–CV–2700–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 11, 1984.

James A. Tucker, Detroit, Mich., for plaintiffs.

Bruce A. Miller, Mark Doman, Detroit, Mich., Michael T. Mulcahy, Cleveland, Ohio, for defendants.

## OPINION AND ORDER

COHN, District Judge.

This case is brought under section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Plaintiff David M. Haupt (Haupt) claims his employer, Michigan Bell Telephone Company (Bell), breached the collective bargaining agreement governing his employment in discharging him and that his union, The Communication Workers of America (the Union), breached its duty of fair representation in the handling of several of his grievances. The Union and Bell filed motions for summary judgment; a hearing was held on January 23, 1984. Supplemental briefs were filed, and a second hearing was held on August 13, 1984. The Union and Bell argue that Haupt's claims are barred by a six month statute of limitations and also that Haupt has failed to plead any facts showing the Union acted in bad faith in processing his grievances. At the first hearing the Court dismissed most of plaintiff's claims regarding the Union's duty of fair representation due to a six month statute of limitations, see *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983),[*] leaving only the claim that the Union breached its duty of fair representation in handling the grievance over his discharge. At the August hearing the Court granted Haupt sixty days to conduct discovery and produce evidence showing the Union breached its duty in handling the grievance over his discharge. The sixty days have expired; the Union and Bell have renewed their motions. Haupt has responded; defendants have filed additional replies. For the reasons that follow defendants' motions are GRANTED.

## I. FACTUAL BACKGROUND

Haupt was employed by Bell from March 8, 1969 to June 25, 1982. At least in recent years he worked as a service technician, doing various repair jobs in customer's homes and on company lines. Haupt was a member of the Union.

On June 25, 1982, Haupt was discharged for poor work performance. This was the last of several progressive disciplinary actions Bell had taken against him; previously Haupt had been suspended on four separate occasions for one day, two days, five days and thirty days, respectively. On June 23, 1982, Haupt had charged for 13 hours of work while performing "bulk load" jobs, a series of small jobs considered to involve easy repairs which are bulked

---

[*] *DelCostello* applies retroactively. *Smith v. General Motors Corporation*, 747 F.2d 372 (6th Cir. 1984).

together to comprise a single day of work. Haupt's supervisor and a second supervisor went out on June 24 to inspect his work and determine why he had taken so long. They determined that Haupt had charged excessive time on eight separate jobs, had made three unauthorized "pick-ups", which involve doing jobs which were not initially assigned, had failed to modularize the phone on four jobs, and had one half-hour unaccounted for. Haupt was discharged the next day.

The Union filed a grievance which was handled through the first three levels by Paul Maynard, a Union representative. The Union demanded that Haupt be returned to work. It argued plaintiff had been under a lot of stress and that one day of bad work should not be held against him when his record had been good for the preceding months. It argued Haupt's past had been used against him and that he had been treated unfairly. Bell contended its decision was justified given Haupt's previous suspensions for poor work performance.

In the meantime Union grievances over plaintiff's five and 30 day suspensions were at the fourth level. The Union decided to arbitrate Haupt's 30 day suspension while his discharge grievance was proceeding through the first three levels since the 30 day suspension was for reasons very similar to those giving rise to Haupt's discharge. An arbitration hearing was held on November 4, 1982. Bell claimed plaintiff had performed wholly unsatisfactory work on October 8, 1981, and was properly suspended for 30 days. Bell argued plaintiff failed to follow his supervisor's explicit instructions, took too long to complete his assigned work, and worked unnecessary overtime. The Union argued in response that Bell failed to show Haupt had acted wrongfully in completing his work October 8; it argued Haupt had used his best judgment in completing his work on the day in question.

The arbitrator found Bell had acted properly in suspending plaintiff for 30 days.

While not crediting all of Bell's contentions the arbitrator found Haupt had misused his time on that day, had removed one phone incorrectly, and had told his supervisors he had completed some jobs which in fact were not done. The arbitrator determined the 30 day suspension was warranted in the light of plaintiff's past disciplinary history.

Haupt's discharge grievance went to the fourth level in December, 1982. Thomas Diekman (Diekman) handled grievances for the Union at this level. He spoke with plaintiff four or five times and met several times with Bell representatives. He demanded that plaintiff be returned to his job, arguing that Haupt had been a good employee, had had a good record since his thirty day suspension, and that Haupt had simply been trying to work efficiently on June 23, 1982. Bell refused to reinstate Haupt. After discussing the case with the Union's attorney, and based on his recommendation,** Diekman decided Haupt's discharge grievance did not merit arbitration since he had lost in arbitrating his thirty day grievance, since the company had progressively disciplined plaintiff, and since Haupt had basically failed to account for Bell's complaints regarding his work performance on June 23.

## II. DUTY OF FAIR REPRESENTATION

An aggrieved employee must exhaust any exclusive grievance and arbitration procedures contained in a collective bargaining agreement prior to bringing a suit under § 301 of the LMRA against his employer. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Since Haupt never had his dismissal arbitrated, this case would normally be barred. However, Haupt can be excused from a failure to exhaust contractual remedies if he shows the Union failed to fairly represent him in processing his grievance. *Vaca, supra*, at 190, 87 S.Ct. at 916. In general, a union breaches its duty of fair represen-

** A copy of the recommendation is attached as Exhibit A.

tation when its conduct towards any union member is arbitrary, discriminatory or in bad faith. *Id.* at 177, 87 S.Ct. at 910; *Poole v. Budd Company,* 706 F.2d 181, 183 (6th Cir.1983). A union is required to conform its conduct to each of these separate standards. Therefore, bad faith is not a necessary element of a claim alleging a union has breached its duty of fair representation, so long as arbitrary or discriminatory behavior is shown. *Ruzicka v. General Motors Corporation,* 523 F.2d 306 (6th Cir.1975) (*Ruzicka I*). If the union handles an employee grievance in an arbitrarily perfunctory manner, it can be held liable for breaching its duty of fair representation. *Poole, supra* at 183; See *Vaca, supra* 386 U.S. at 194, 87 S.Ct. at 919; *Ruzicka v. General Motors Corp.,* 649 F.2d 1207, 1211 n. 3, 1212 (6th Cir.1981) (*Ruzicka III*); *Farmer v. ARA Services, Inc.,* 660 F.2d 1096 (6th Cir.1981). However, an employee must show more than mere negligence or mistaken judgment. *Poole, supra* at 183; *Farmer, supra* at 1103. A union's decision to not process a grievance through arbitration is not grounds for claiming the union breached its duty if it is based on a good faith determination that the grievance is without merit. *Besedich v. Missile and Space Division of LTV,* 433 F.Supp. 954 (E.D.Mich.1977).

■■■ A review of cases is helpful in setting the contours of what constitutes arbitrary conduct on the part of a union. A union may breach its duty of fair representation when it ineptly handles a grievance because it is ignorant of contract provisions having a direct bearing on the case. *Milstead v. International Brotherhood of Teamsters,* 580 F.2d 232 (6th Cir.1978). It is arbitrary to refuse to continue a grievance where a company agrees to hold off on a worker's discharge until the worker can return and the worker returns asking the union to continue the grievance. *Williams v. Teamsters Local Union No. 984,* 625 F.2d 138, 139 (6th Cir.1980). Unexplained union inaction which substantially prejudices a member's grievance may be sufficiently arbitrary to be considered unfair representation. *Ruzicka III, supra* at

1211; *Ruzicka I, supra.* Further, if a union representative pliantly accepts the company version of an employee's ability to work, and totally fails to investigate the employee's claim that he is able to work, there is a possible inference the union acted arbitrarily. *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888 (4th Cir.1980). Also, a union's failure to properly investigate a grievance and to interview pertinent witnesses may be unfair representation. *Monroe v. International Union, UAW,* 540 F.Supp. 249, 254 (S.D.Ohio, 1982).

On the other hand, if a union adequately investigates the facts in the course of pursuing a grievance and presses the employee's case it cannot be held liable for unfair representation simply because it decided the grievance is not sufficiently meritorious to take to arbitration. See *Poole, supra; Besedich, supra.* In *Poole* the union showed it had adequately investigated the member's claim that it was unsafe to work without a partner in removing doors from an acid bath. Poole had been discharged because he refused to work on his own when a supervisor directed him to do so. The union processed a grievance up to the point of arbitration, but decided not to arbitrate. It specifically listed the reasons why it decided arbitration was not warranted, mentioning Poole's past disciplinary record and the lack of solid evidence to show the job could not be performed safely by one individual. Under these circumstances, the Sixth Circuit affirmed a summary judgment in favor of the union.

### III. THE UNION'S ACTION

■■■ The Union is entitled to summary judgment because the facts in this case are insufficient to sustain a claim that the Union breached its duty in handling Haupt's discharge grievance. The Union adequately investigated Haupt's case and determined his discharge did not warrant arbitration. It is not this court's function to second guess the Union's determination when it is reasonably made.

Haupt argues the Union breached its duty of fair representation in the following ways:

1. Diekman relied solely on Bell representatives' version of events and never attempted to ascertain both sides of the story;

2. Diekman failed to interview prospective witnesses;

3. Diekman failed to argue it was unfair to have a different first line supervisor inspect Haupt's work rather than his own supervisor;

4. Diekman failed to contest Bell's pickup and estimated time policies, although these were sore points for the Union;

5. Diekman did not argue the company was out to get Haupt.

Haupt's arguments are insufficient to raise any material disputed fact issues which would warrant a trial in this case. Diekman did not rely solely on Bell's representations regarding Haupt's work on June 23; he spoke directly with Haupt on several occasions, eliciting his version of what occurred. This is quite different than the situation in *Wyatt, supra,* where the union representative failed to investigate the worker's contention that he was physically able to work and simply accepted the employer's representations. Here Haupt was unable to adequately explain his work performance on June 23, except to explain why he did not modularize certain phones. He did not explain why he did three pick-ups without authorization, even though he had been told about Bell's pick-up procedures. Most importantly, Haupt did not explain why his work took so long, except to say he was working as efficiently as he knew how. Especially significant are work records which show that on two jobs Haupt did no work, but still charged one half hour for each job, even though these jobs were less than five minutes driving time from his previous jobs. Quite simply, Diekman gave Haupt a full chance to rebut Bell's complaints about his work and he failed to adequately do so. It is difficult to fault Diekman for not investigating further when Haupt, the person who knew the most about his own work on June 23, did not adequately rebut Bell's contentions about his poor work performance.

Haupt suggests Diekman should have interviewed prospective witnesses, but does not list a single material witness Diekman could have interviewed. Diekman certainly knew what Bell witnesses would say; their position was clearly set forth in memos, and Bell representatives at grievance hearings let Diekman know Bell's position. Haupt has attached a petition with numerous signatures of individuals who believe Haupt was subjected to harassment and was discharged due to his past work for the Union. However, these petitions are not admissible evidence and therefore cannot be considered on this motion for summary judgment. See Fed.R.Civ.P. 56(e); see generally, 6 *Moore's Federal Practice* ¶ 56.11 at pp. 56–197 to 56–209; 10 Wright, Miller & Kane, *Federal Practice and Procedure* §§ 2721, 2722. Furthermore, the vague contention that Bell was out to get Haupt, without any explanation of Haupt's poor work performance, would not have had much relevance to the Union's decision not to arbitrate.

Haupt's other contentions are that the Union did not make every meritorious argument it could have. This is simply not material. The Union made a reasonable decision to not pursue Haupt's grievance to arbitration and has fully explained its reasons. Haupt had previously been progressively disciplined for poor work performance before being discharged. Haupt's 30 day suspension was taken to arbitration and the arbitrator found the suspension to be reasonable based on plaintiff's failure to explain his poor work performance and his disciplinary history. Faced with a discharge which was also due to poor work performance, and faced with a similar failure on Haupt's part to adequately explain his poor work performance, the Union reasonably concluded arbitration of plaintiff's discharge would result in the same fate as the arbitration on his 30 day suspension.

"The grievance process is not expected to be error free and the courts should hesitate to interfere with legitimate internal

union decisions which fairly evaluate whether a claim warrants resort to the arbitration machinery."

*Poole, supra* at 184.

The handling of Haupt's grievance may not have been perfect, but the record conclusively shows the Union adequately evaluated Haupt's claim and made a reasonable decision to not pursue his discharge grievance to arbitration. Accordingly, this case is DISMISSED.

SO ORDERED.

## Communications Workers of America AFL-CIO

20525 Center Ridge Rd., Rm. 515
Cleveland, Ohio 44116

TO:  Tom Diekman, Administrative Assistant     DATE: April 25, 1983

FROM: Michael T. Mulcahy, Counsel     FILE #

SUBJECT: David Haupt Discharge
Local 40.01 - Michigan Bell

---

This is to deny authority to arbitrate the above captioned case. After a thorough review of the grievants employment record, the expedited arbitration award and our discussions, I do not feel that this case merits arbitration. The grievant had several suspensions including a 30 day suspension and final warning upheld in the expedited arbitration hearing for his poor performance.

The Company followed progressive discipline in this case and there was little or no improvement on the grievants part.

Based on the facts presented, there is little reason to believe that an arbitrator would overturn the discharge.