Michael J. LUCAS, Jr., Plaintiff,

v.

LEASEWAY MULTI TRANSPORTATION SERVICE, INC., and Local Union No. 614 a/w International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Jointly and Severally, Defendants.

No. 89–1233.

United States District Court, E.D. Michigan, S.D.

April 24, 1990.

Ronald W. Chapman, Chapman & Associates, Detroit, Mich., for plaintiff.

Richard J. Seryak, Miller, Canfield, Paddock & Stone, Detroit, Mich., Daniel G. Zeiser, Allport, Knowles, Cleveland, Ohio, for defendants.

## MEMORANDUM OPINION

GADOLA, District Judge.

This action is a hybrid suit under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, in which plaintiff alleges breach of a collective bargaining agreement (CBA) and breach of a duty of fair representation. Before the court are motions for summary judgment filed by both defendants. Defendant Local Union No. 614 (Local) also has moved for Rule 11 sanctions. The court will state the undisputed factual background, the standard by which the court must judge the motions, and then address the merits of the motions.

## I. BACKGROUND FACTS

Defendant Leaseway provides yard services for Chrysler Motor Corporation's Sterling Heights plant. Leaseway and Local are parties to a CBA, the provisions of which govern plaintiff's employment. *See* Local's Exhibit B (the CBA). Plaintiff began his employment with Leaseway on January 18, 1987. In June of 1987, plaintiff was discharged following an altercation with another employee. Plaintiff filed a grievance protesting the termination, and the termination was reduced to a ten-day suspension.

On June 7, 1988, Craig Dean, a Leaseway foreman, called plaintiff and told him he had work for him the next day. Dean inquired of him whether he would do odd jobs, and plaintiff indicated that he would not object as long as Dean had a full crew. At that time plaintiff had the lowest seniority of all employees. After plaintiff reported to work, Rob Velez, another Leaseway foreman, told plaintiff to pick up trash around the perimeter of the yard. Plaintiff objected to picking up trash, stating "that that was foreman's work." Lucas Dep., at 47. Plaintiff admits that he was given a direct order to pick up trash. Lucas Dep., at 84.

Velez and plaintiff then went to Leaseway's office to discuss the problem with Bob Ratcliff, the terminal manager. Ratcliff also instructed plaintiff to pick up the trash and informed him that if he did not do the work and left, he would be considered a voluntary quit. Lucas Dep., at 38; Raes Dep., at 37.

Plaintiff's present contention is that he told Ratcliff and Velez that he wanted to speak with his union steward. Plaintiff left Ratcliff's office and sought out his committee man, Mr. Virga. Virga was busy at the moment and told plaintiff to see the steward, Mr. Hunt. Plaintiff located Hunt but was unable to discuss the matter with him because foreman Velez interrupted them. Velez allegedly ordered them to stop talking and for plaintiff to punch out. Plaintiff punched out and was later notified that he was considered a voluntary quit because he walked off the job. *See* Local's Exhibit C (termination letter).

On June 13, 1988, plaintiff filed a grievance protesting his discharge, claiming that he was ordered off the job and did not quit. A local level hearing was held several weeks later at which Leonard Williams (a business agent and trustee for Teamsters, Local 614), Tim Dellasandro (a union steward), Tony Virga (a committee man), and plaintiff attended. Ratcliff, Velez, Dean, and Dave Koty were present for Leaseway. Prior to the hearing Virga, who witnessed some of the events at issue, investigated the allegations of the grievance and spoke with Hunt, Frank Lopez, and plaintiff. Virga then reported his findings to Leonard Williams, Local's business agent, by telephone and in person. Williams told plaintiff that he might be able to get him reinstated without back pay. Plaintiff, however, wanted reinstatement with back pay.

Since the grievance could not be disposed of at the local level, plaintiff's grievance was heard by a joint labor-management arbitration panel pursuant to Article VIII of the CBA. Plaintiff did not appear at the panel hearing because he was working in Chicago, Illinois. Williams told plaintiff to obtain notarized statements for the panel, which he did. Plaintiff also prepared a statement for the panel. *See* Local's Exhibit E. Williams presented plaintiff's statement to the panel as well as the statements obtained by plaintiff.

The arbitration panel upheld Lucas' discharge, finding that he left the job without authorization from a management employee. *See* Local's Exhibit G. Plaintiff then filed this suit, alleging that the union breached its duty of fair representation and that Leaseway breached the CBA.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rule of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [citation omitted]." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th ed.1979)). The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. F.R. Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted); *see Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## III. SUMMARY JUDGMENT MOTIONS

■ To prevail in an action under section 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, an employee must prove both that the employer breached the CBA and that the union breached its duty of fair representation. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Both defendants initially argue that summary judgment should be granted because plaintiff cannot show Local 614 breached its duty of fair representation.

■ A breach of the statutory duty of fair representation occurs only when a union's conduct is arbitrary, discriminatory, or in bad faith, or when the union handles the grievance in a perfunctory or arbitrary manner. *Vaca*, 386 U.S. at 192, 87 S.Ct. at 917. Ordinary negligence, mistake, error, or flaws in judgment by the union representative do not constitute a breach of the union's duty. *Deringer v. Columbia Transp. Div., Oglebay Norton*, 866 F.2d 859 (6th Cir.1989); *Poole v. Budd Co.*, 706 F.2d 181, 184 (6th Cir.1983).

Plaintiff alleges several failures on the part of Local 614 in support of his claim that it breached its duty of fair representation:

Mr. Williams ignored a meritorious grievance and processed it in a perfunctory fashion. By his own admission, (1) he failed to secure witnesses or written statements of witnesses for presentation to the panel; (2) he failed to investigate what evidence the employer was going to present in an effort to prepare a rebuttal; (3) he didn't investigate unfair treatment of Plaintiff alleged in grievance or if Velez told him to punch out; (4) he never notified Plaintiff that the grievance was deficient because it didn't ask for prayer for relief; (5) he didn't investigate if the crew was short-handed the day in question—this would support harrassment [sic] claim; (6) he didn't secure documents for presentation to support Plaintiff's claim that the company refused to allow the union representative to speak with Plaintiff; (7) he didn't prepare a statement of facts for the panel—he only submitted the statements the Plaintiff secured; (8) he never interviewed Mr. Lopez, who was present when Mr. Velez ordered Plaintiff off the premises and to punch out.

Plaintiff's Response Brief, at 6.[1] Defendants argue that these allegations are unsupported by any evidence and do not amount to a breach of the duty of fair representation. The court agrees.

As to the first allegation, Williams attended the arbitration hearing and presented the statement prepared by plaintiff; plaintiff, on the other hand, did not attend the hearing. In his statement, plaintiff omits several of the points he now urges that Williams should have addressed. For example, the gist of plaintiff's argument is that he was ordered to punch out, not that he voluntarily walked off the job. His statement to the panel, however, says

*"[w]hen I punched out the day I walked off,* I thought because of the fact I was laid-off at the time all I was doing was refusing one day's work; not quitting my job." (emphasis added). In his deposition testimony plaintiff says that "[a]fter my foreman told me I could punch out. [sic] He gave me a choice. I could punch out and go home if I didn't want to pick up the trash. So I said, well, I don't want to pick up the trash, I guess I can go home." Lucas Dep., at 84. His deposition testimony conclusively shows that Velez "gave [plaintiff] the choice of either picking up the garbage or going home." Lucas Dep., at 83; *see id.* at 100 ("Why should they fire me when they gave me a choice to pick up garbage or punch out and go home ... *My choice was plain and simple.*") (emphasis added); Hunt Statement, Local's Exhibit E ("Mr. Velez then told Mike that if he didn't want to pick up garbage that he could punch out and leave."). Moreover, there is no dispute that plaintiff was informed that if he left work he would be considered a voluntary quit. Lucas Dep., at 38; Raes Dep., at 37.

■ Williams presented all of the evidence plaintiff had obtained and argued that evidence to the panel. Given what Williams did do, and given plaintiff's position in his own statement to the panel, the court cannot say that Williams' alleged failure to obtain witnesses and statements on plaintiff's behalf could amount to a breach of the duty of fair representation. *See Anderson v. Ideal Basic Industries,* 804 F.2d 950, 953 (6th Cir.1986) (no showing how additional arguments change panel's decision); *Haupt v. Michigan Bell Telephone Co.,* 599 F.Supp. 265 (E.D.Mich. 1984).

1. In his complaint plaintiff alleges that the union

failed to adequately investigate plaintiff's grievance against employer wherein plaintiff was wrongfully discharged without just cause ... [The] union did not speak with various witnesses to determine the facts and therefore, was not prepared to adequately represent your plaintiff at the arbitration of November 1988. This omission by defendant union, represents gross negligence and a failure to adequately represent your plaintiff ...

That defendant, union did other acts or omissions that resulted in a gross failure to represent your plaintiff. That as a result of defendant union's acts or omissions, the Central-South [sic] joint arbitration committee ruled against plaintiff in the favor of defendant, employer. That defendant, union business agent told your plaintiff that he had lost and nothing further could be done for him and that was final.

Complaint, paragraphs 8–12.

Plaintiff's second argument similarly fails to create a genuine issue of material fact. The union is not held to the standards of attorneys, and the grievance process is not necessarily to pattern that of civil litigation with all of its trappings. *Poole*, 706 F.2d at 105. In this instance there was a local hearing at which Williams, Virga, Dellasandro, plaintiff, and company officials attended. Williams successfully argued that the company should hear the grievance on its merits rather than dismiss it on timeliness grounds. As to the merits of the case, plaintiff knew the arguments defendant would make because the company officials involved in the incident presented their side of the story at the local level hearing. This case does not present any "secret defense" of which the plaintiff was unaware, requiring the union to "investigate" the company's evidence.

The third argument also fails. The union does not have to investigate all possible grounds for a grievance, especially when the grievant does not even bring them to the attention of the union. There is no evidence that Williams knew or should have known about the plaintiff's present complaint that rather than voluntarily punching out, Velez ordered him to punch out. Plaintiff's statement fails to mention that he was "ordered" to punch out.[2] A union representative's failure to advance every argument requested by the grievant does not amount to reckless disregard or arbitrary conduct. The representative's misunderstanding or misapplication of legal arguments in a grievant's case also does not rise to the level of arbitrariness or reckless disregard necessary to prove a breach of the duty of fair representation. *Elliott v. United States Postal Service*, 621 F.Supp. 1093 (W.D.Mich.1985); *Haupt*, 599 F.Supp. 265.

The fourth argument that the grievance was deficient because it did not have a prayer for relief is without merit, for the arbitration panel did not base its decision on such a technicality but decided the matter on the merits.

The fifth argument that Williams did not investigate whether there was a full crew at the yard that day to support a harrassment charge also fails. *See Elliott*, 621 F.Supp. 1093; *Haupt*, 599 F.Supp. 265.

Williams' failure to obtain documents to support the charge that Velez did not let plaintiff speak with his union steward also does not amount to a breach of the duty of fair representation. Although there are a number of courses of action Williams could have taken, the question is whether his failure to do one or a number of them amount to more than negligence. There is no showing what the documents would have been, what they would have shown, or what effect they would have had on the ultimate decision. There is no dispute that plaintiff refused a direct order to perform work and that he left work after being given the choice of doing the work or punching out. There is also no dispute that plaintiff was informed that he would be considered a voluntary quit if he left work. *See Brock v. Illinois Cent. Gulf R. Co.*, 621 F.Supp. 830 (D.Miss. 1985); *Elliott*, 621 F.Supp. 1093; *Haupt*, 599 F.Supp. 265; *see also* Williams Dep., at 105 (any time you refuse work you are considered a voluntary quit; procedure is to do the work and grieve the matter later); Ratcliff Dep., at 123 (same).

Williams' failure to present his own version of the grievance and obtain his own statements neither approximates a breach of the duty nor creates a genuine issue of material facts on that issue. Williams presented plaintiff's statement and the statements he obtained, an entirely appropriate action given the circumstances of the case.

Finally, Williams' failure to interview Lopez does not create a genuine issue of material fact. Williams spoke with Virga and Hunt about the incident, and Virga,

---

**2.** As the court discussed earlier, the evidence indicates that plaintiff was warned that if he did not do the work he would be considered a voluntary quit and that he was then given the *choice* of picking up the trash or punching out. He chose to punch out and the company considered him a voluntary quit.

who had witnessed some of the events at issue, had spoken with witnesses Hunt and Lopez. Williams presented plaintiff's position and his supporting statements to the panel. *Brock*, 621 F.Supp. 830. Fair representation does not mean perfect representation.

At best, plaintiff's allegations against the union amount to negligence. Even that is questionable, given the evidence showing that plaintiff refused a direct work order, knowing that if he refused he could be considered a voluntary quit. He was then given the choice of doing the work or leaving work, and he chose to leave. Accordingly, the court finds that plaintiff's allegations do not create a genuine issue of material fact as to whether defendant union violated its duty of fair representation. On this record, the plaintiff cannot demonstrate a case in his favor that should be submitted to the trier of fact on that issue. Since plaintiff's count as to the duty of fair representation fails, plaintiff's other count alleging a breach of the CBA also must fail. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976) (holding unless plaintiff can prove breach of union's duty of fair representation, "finality" rule of *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) precludes relitigation of plaintiff's grievance).

Defendant Local also requests sanctions under Federal Rule of Civil Procedure 11, arguing the "utter absence of *any* evidence to show that (1) the union breached its duty of fair representation or (2) that the alleged breach "tainted" the arbitral decision."

Rule 11 states:

> Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit.... The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The standard under Rule 11 is an objective one and one of reasonableness under the circumstances. *Herron v. Jupiter Transportation Co.*, 858 F.2d 332, 335 (6th Cir. 1988).

The court cannot find a Rule 11 violation upon this record, for the court cannot say the plaintiff failed to make a reasonable inquiry into the facts and law. The plaintiff has pointed to some colorable facts in support of his claim of a breach of the duty of fair representation—specifically, that he did not voluntarily walk off the job but that he was ordered off the job, making his termination without just cause. *See, e.g.,* Hunt Statement, Local's Exhibit E (Velez "told Mr. Lucas to punch out and leave.").

Defendants' motions for summary judgment are GRANTED. Defendant union's motion for sanctions is DENIED. Defendants shall submit an appropriate order approved as to form.