**JEWISH WAR VETERANS' MEMORIAL HOME ASSOCIATION, a Michigan nonprofit corporation, Plaintiff,**

v.

**JEWISH WAR VETERANS OF THE UNITED STATES OF AMERICA, a national chartered organization, Defendant.**

**No. CIV. 03–40136.**

United States District Court,
E.D. Michigan,
Southern Division.

March 30, 2004.

Richard T. Urbis, Rochester Hills, MI, for Jewish War Veterans' Memorial Home Association, Plaintiff.

A. Michael Palizzi, Miller, Canfield, Detroit, MI, Allison C. Reuter, Nemeth Burwell, Patricia M. Nemeth, Nemeth Burwell, Detroit, MI, for Jewish War Veterans of United States of America, Defendant.

## MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

### I. INTRODUCTION AND BACKGROUND

This diversity case involves a dispute over whether or not the Jewish War Veterans' Memorial Home Association ("MHA") is subordinate to the Jewish War Veterans of the United States of America ("JWV"). This dispute arose when MHA attempted to sell a piece of real estate. JWV claims that MHA does not have the authority to sell the property without the approval of JWV. MHA claims that it is

independent and does have the authority. Both parties ask this Court to declare whether or not MHA is subordinate to JWV, and filed cross motions for summary judgment. For the reasons stated below, the Court determines that MHA is subordinate to JWV, and will therefore grant JWV's motion and deny MHA's motion.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact regarding the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606, 608 (6th Cir.1992).

In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in a light most favorable to the nonmoving party. *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The Court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, when a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries the initial burden of demonstrating that there are no genuine issues of material fact in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990) (Gadola, J.), *aff'd,* 929 F.2d 701 (6th Cir.1991). "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *see Cox v. Ky. Dep't of Transp.,* 53 F.3d 146, 150 (6th Cir.1995).

## III. ANALYSIS

To determine whether MHA is subordinate to JWV, the Court must examine the corporate documents of both entities. MHA filed its original articles of incorporation in 1944. More relevant to this action, however, are MHA's 1964 bylaws, the earliest version of the bylaws submitted to the Court. MHA's 1964 Bylaws state that

*[t]his association shall be subordinate to the National Convention of the Jewish War Veterans of the United States* and shall be governed so as to effectuate the purposes of this association as set forth in its articles of incorporation and to further the aims and objects of the Jewish War Veterans of the United States as set forth in the preamble to its Constitution.

MHA 1964 Bylaws, Art. XII, (Def's Ex. S). The plain language of MHA's own 1964 bylaws indicates that MHA is subordinate to the JWV.

■ MHA argues that JWV has not offered proof that the 1964 bylaws were adopted by the MHA. Therefore, MHA argues, the bylaws should be disregarded. The Court notes that MHA has not denied that these bylaws were adopted nor has the MHA provided any evidence that the bylaws were not adopted. The affidavit of the MHA President does not mention any dispute about the adoption or authenticity of any bylaws. Consequently, the Court determines that there is no question of material fact regarding the adoption or authenticity of the 1964 bylaws and will therefore consider the document. *See* Fed.R.Evid. 1003 ("A duplicate is admissible to the same extent as an original un-less (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original.")

■ MHA further argues that the by-laws are not relevant to this dispute because Michigan law does not require specific content in a corporation's bylaws. MHA's Resp. at 7. It is true that Michigan law does not require any specific language in a corporation's bylaws: "[t]he bylaws may contain any provision for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation." Mich. Comp. Laws § 450.1231 (2004). This provision of Michigan law, however, does not entail that MHA's bylaws are irrelevant to determining whether MHA is subordinate to JWV. To the contrary, since Michigan law does not require any specific content in the bylaws, the content of the bylaws may be assumed to convey the uninhibited intent of those approving the bylaws. In 1964, MHA indicated in the plain language of its bylaws that it was subordinate to JWV.

■ MHA next argues that the current JWV constitution limits subordinate organizations to those that have complied with certain formalities. Since MHA has not complied with those formalities, MHA contends that MHA cannot be considered a subordinate organization. MHA quotes the current JWV constitution, which states: "No Subsidiary Organization, nor any of its units or Echelons, shall be deemed to exist, or to be affiliated, with this [JWV] Organization unless, and until, a valid charter is issued to such Subsidiary Organization, unit or Echelon." 1996 JWV Const. at Art. XI (JWV's Ex. B). MHA, however, omits the first clause of this paragraph, which states *"Except as may presently exist." Id.* Thus, the plain language of the constitution does not require

presently existing subordinate organizations to obtain a charter. Subsidiary organizations previously formed are exempt from the charter requirement adopted in 1996. Consequently, the absence of a charter is not determinative of MHA's status.

■ The Court must therefore determine whether the language in the 1964 bylaws continues to bind MHA to JWV, even though MHA has subsequently amended its bylaws to omit any mention of subordination. Courts have held that relationships between national and subordinate organizations are contractual in nature: "[t]he constitution and bylaws of the central governing body of a fraternal benefit society, together with the charter of the subordinate body, constitutes a contract between the subordinate and parent organizations." 36 Am.Jur.2d *Fraternal Orders and Benefit Societies* § 30 (citations omitted). In this case, neither party has produced a charter document. MHA does provide an affidavit, which the Court presumes to be true for the purpose of adjudicating this motion, that states that MHA "has never submitted an application to become chartered as, or to otherwise be recognized, as a subsidiary organization" of the JWV "and no such charter has ever been issued." MHA Ex. 2 at ¶ 5. As discussed above, however, subsidiary organizations formed before the constitutional amendments are exempt from the charter requirement.

■ Even without the charter, the Court determines that there is sufficient evidence to determine as a matter of law that a contractual relationship was formed between MHA and JWV, by which MHA became subordinate to JWV. In addition to the plain language of the 1964 bylaws and the exemption from the charter requirement, the requirement of an oath subordinated members of the MHA to the JWV. Active members of the MHA were re-

quired to be members in good standing of the JWV's Department of Michigan. MHA's 1964 Bylaws at Art. III (JWV's Ex. S). Active members of the JWV take an oath of obligation, in which members swear to "obey the Constitution and By-Laws of the [JWV]." JWV's Reply Ex. A. Courts have held that individual members are presumed to know the contents of the constitution and bylaws. *See, e.g., Benes v. Supreme Lodge Knights & Ladies of Honor*, 231 Ill. 134, 83 N.E. 127, 128–29 (Ill.1907). Additionally, individuals are presumed to know of and be bound by amendments to those documents. *See, e.g., Grand Lodge of N.H., Indep. Order of Odd Fellows v. Union Lodge No. 32 of Deerfield N.H., Indep. Order of Odd Fellows*, 111 N.H. 241, 279 A.2d 590, 593 (N.H.1971) ("It is generally recognized that fraternal organizations may change their bylaws and enact others which are reasonable and consistent with the purposes of the organization and that members are bound by such changes.") (citation omitted).

The members and officers of MHA subordinated MHA to JWV in the 1964 bylaws, if not before. This created a contractual relationship of subordination between MHA and JWV. The members and officers were then bound by their oath to obey the revised provisions of the JWV constitution and bylaws regarding subordinate organizations. MHA cannot change this contractual relationship by subsequent amendments to its bylaws. A Washington state court confronted a similar situation to this case, and held that a subsidiary organization's "effort to amend its corporate bylaws by deleting the provision requiring [compliance with the National organization] could not change its contract with the Order." *Nat'l Grange of the Order of Patrons of Husbandry v. O'Sullivan Grange*, 35 Wash.App. 444, 667 P.2d 1105, 1109 (Wash.1983). The

Court does note that the Washington state case involved a subsidiary organization that had a charter. This difference, however, is not sufficient to distinguish this case. As noted above, JWV exempted subsidiary organizations formed prior to the revisions to the JWV constitution from the charter requirement.

MHA does not cite to a single case in its response brief and motion for summary judgment to support its arguments. Instead of providing case law, MHA asks the Court "to scrutinize the factual assertions made by the JWV and to assess its motivation." MHA's mot. at 4. MHA then suggests that JWV's goal is to "gain[ ] control of the assets of its remaining subordinate echelons in order to finance and maintain a national memorial." *Id.* at 3. The motivation of a party, however, does not affect the plain meaning of language in corporate documents; a party's rhetoric is not a substitute for legal reasoning. The Court has determined that the language of the corporate documents subordinates MHA to JWV. This determination is unaffected by the alleged scheme to finance a national memorial.

MHA also implores this Court "to recognize that this very lawsuit represents the MHA's commitment to the purpose of free institutions, liberty, equal rights and full justice and to its promise to preserve the memories of patriotic services of veterans who have died." *Id.* at 8. The Court commends a commitment to these ideals. Corporations and nonprofit organizations are examples of free institutions to which MHA allegedly commits itself. These free institutions are created by the law and then bound by the language of corporate documents and the laws that create them. As discussed above, the plain language of these documents demonstrates that MHA is bound and subordinate to JWV. MHA freely subordinated itself to JWV through its bylaws and by oath and has failed to show how this status can be changed through subsequent amendments to its corporate documents.

Based on the plain language of the 1964 bylaws, the exemption from the charter requirement, and the content of the oath, this Court determines that MHA is subordinate to JWV. Accordingly, the Court will grant JWV's motion for summary judgment and deny MHA's motion for summary judgment. This determination disposes of the claim in MHA's complaint and count one of JWV's counterclaim for declaratory judgment.

The parties have not briefed the issue raised in count two of JWV's counterclaim: whether JWV is entitled to an accounting of MHA at the expense of MHA. The Court notes that a limited accounting has already been provided for in a stipulated order from the parties: "on or before August 11, 2003, the MHA shall provide to the JWV a full and complete accounting of where any and all proceeds received by the MHA as a result of the sale of Property were spent, disposed of, or deposited." August 8, 2003 Order at 2. If Defendant JWV still seeks the accounting requested in the counterclaim, JWV shall file a motion for summary judgment on this count within twenty-one days of service of this order. Responsive briefing should be filed in compliance with Local Rule 7.1. If the Court does not receive such a motion by the deadline, the Court will dismiss count two of JWV's counterclaim for failure to prosecute and will then enter judgment in this case in accordance with this order.

## IV. CONCLUSION

**ACCORDINGLY, IT IS HEREBY ORDERED** that the motion for summary judgment by Defendant Jewish War Veterans of the United States of America [docket entry 24] is **GRANTED**.

**606**

**IT IS FURTHER ORDERED** that the motion for summary judgment by Plaintiff Jewish War Veterans' Memorial Home Association [docket entry 27] is **DENIED.**

**IT IS FURTHER ORDERED** that JWV may file a motion for summary judgment on count two of its counterclaim within **TWENTY–ONE (21) DAYS** of service of this order. Briefing shall comply with Local Rule 7.1.

**SO ORDERED.**